Ucelo-Gomez v. Mukasey

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2006

(Submitted: March 2, 2007)      (Decided: November 21, 2007)

Docket Nos. 04-4184-ag(L), 04-4185-ag(CON)

- - - - - - - - - - - - - - - - - - - - -x

JOSE GODOFREDO UCELO-GOMEZ and
ANA MARIELA ESPANA-ESPINOZA,

Petitioners,

- v.-

MICHAEL B. MUKASEY, Attorney General,[*]

Respondent.

- - - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, WALKER and WALLACE, Circuit Judges.[**]

This reviews a decision of the Board of Immigration

Appeals on limited remand of a petition for review from an

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

[**] The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

order of the Board of Immigration Appeals summarily affirming an Immigration Judge's denial of petitioners' applications for asylum and withholding of removal.

Upon further consideration, the petition is denied.

Roberto Tschudin Lucheme, Glastonbury, Connecticut, <u>for Petitioners</u>.

Francis W. Fraser, Margaret Perry, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., <u>for Respondent</u>.

PER CURIAM:

Petitioners Jose Godofredo Ucelo-Gomez and Ana Mariela Espana-Espinosa (husband and wife), citizens of Guatemala, originally challenged a summary affirmance by the Board of Immigration Appeals ("BIA") of the oral decision of an immigration judge ("IJ") that (1) denied their applications for asylum and withholding of removal under the Immigration and Naturalization Act ("INA") and their applications for protection under the Convention Against Torture ("CAT"), and (2) directed their removal to Guatemala. Their asylum claim was premised on their membership in a social group composed of affluent Guatemalans who suffer persecution fueled by class rivalry in an impoverished society. This Court

2

vacated the BIA's order and remanded the case to the BIA by published opinion on May 9, 2006, so the BIA could determine in the first instance whether affluent Guatemalans in the petitioners' situation constitute a "particular social group" within the meaning of the INA. See Ucelo-Gomez v. Gonzales, 464 F.3d 163, 172 (2d Cir. 2006) (amending 448 F.3d 180 (2d Cir. 2006)). The BIA was given 49 days to issue a responsive opinion; but the mandate of this Court was placed on hold on May 12, 2006. On June 19, 2006-- before the end of the 49 day period but while the mandate was still on hold--the BIA issued a non-precedential opinion, affirming the IJ's decision on the grounds that petitioners had not shown that "affluent Guatemalans" are members of a particular social group and that they did not demonstrate they were persecuted or faced a well-founded fear of future persecution on account of a protected ground. See In re Espana-Espinoza & Ucelo-Gomez, A 79 781 430, A 79 781 419 (B.I.A. June 19, 2006). In an amended opinion issued nunc pro tunc and filed on September 28, 2006, this Court clarified that its original remand was pursuant to United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir. 1994), and that the panel thus retained jurisdiction to rule upon

3

the petition on appeal following disposition of the remand. On October 2, 2006 the hold was lifted and the following day the mandate issued. The BIA later issued an identical precedential opinion, see In re A-M-E- & J-G-U-, 24 I. & N. Dec. 69 (B.I.A. Jan. 31, 2007), publishing as precedent In re Espana-Espinoza & Ucelo-Gomez, A 79 781 430, A 79 781 419 (B.I.A. June 19, 2006).[3]

The BIA has fulfilled the terms of our remand by rendering a timely opinion as to whether affluent Guatemalans constitute a particular social group for asylum purposes. We retained jurisdiction to decide the issues set forth by the petition, and upon further consideration in light of the BIA's opinion, we now deny the petition.

## BACKGROUND

The facts underlying Mr. Ucelo-Gomez's and Ms. Espana-Espinosa's petitions for review are set forth in detail in our previous opinion, see Ucelo-Gomez, 464 F.3d at 165-66, and the reader's familiarity with it is assumed.

---

[3] The BIA's precedential decision amended its June 19, 2006 non-precedential decision by making editorial changes consistent with its designation of the case as precedent. See In re A-M-E- & J-G-U-, 24 I. & N. Dec. 69, 69 n.1 (B.I.A. Jan. 31, 2007).

**DISCUSSION**

**I**

"When the BIA issues an opinion, 'the opinion becomes the basis for judicial review of the decision of which the alien is complaining.'" Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005) (quoting Niam v. Ashcroft, 354 F.3d 652, 655 (7th Cir. 2004)). As we stated in our opinion remanding the case, we grant Chevron deference to a precedential opinion of the BIA if the basic requirements of Chevron are met. See Ucelo-Gomez, 464 F.3d at 170; see also Shi Liang Lin v. U.S. Dep't of Justice, 494 F.3d 296, 304 (2d Cir. 2007) (en banc) ("When reviewing the BIA's interpretation of statutes that it administers, we apply the Chevron principles."). "Under the Chevron standard, we adhere to Congress' purpose where the INA clearly speaks to the point in question, but if the INA is silent or ambiguous, then we must defer to any reasonable interpretation of the statute adopted by the Board as the entity charged by Congress with the statute's enforcement." Kuhali v. Reno, 266 F.3d 93, 102 (2d Cir. 2001) (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999)). Here, after the BIA issued a non-precedential

5

decision, the agency subsequently had occasion to issue an identical precedential opinion construing the ambiguous statutory phrase "particular social group."  We therefore inquire whether the BIA's construction was a reasonable interpretation of the statute.

**II**

In its precedential opinion, the BIA determined that "affluent Guatemalans" are not a "particular social group" for asylum eligibility purposes.  Referring to the seminal decision of In re Acosta, 19 I. & N. Dec. 211 (B.I.A. 1985), the BIA explained that members of a particular social group must share some common characteristic that members "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences."  A-M-E-, 24 I. & N. Dec. at 74 (internal quotation marks omitted).  The BIA went on to consider two factors identified in In re C-A-, 23 I. & N. Dec. 951 (B.I.A. 2006): (1) membership in a purported social group requires a certain level of "social visibility" and (2) the definition of the social group must have particular and well-defined boundaries.  A-M-E-, 24 I. & N. Dec. at 74.

6

The BIA's rulings on these points constitute sufficient--and affirmable--holdings.

1.  <u>Social Visibility</u>.  <u>In re C-A-</u>'s social visibility requirement is consistent with this Court's reasoning that a "particular social group is comprised of individuals who possess some fundamental characteristic in common which serves to distinguish them in the eyes of a persecutor--or in the eyes of the outside world in general."  <u>Gomez v. INS</u>, 947 F.2d 660, 664 (2d Cir. 1991).  The BIA's decision relied heavily upon <u>In re C-A-</u>'s discussion of recent UN Guidelines that indicate that "persecutory action toward a group may be a relevant factor in determining the visibility of a group in a particular society."  23 I. & N. Dec. at 960 (emphasis omitted).  However (as the BIA stated), although the existence of persecution is a relevant factor, "a social group cannot be defined exclusively by the fact that its members <u>have</u> been subjected to harm . . . ."  <u>A-M-E-</u>, 24 I. & N. Dec. at 74 (emphasis added).  Applying these principles, the BIA considered whether affluent Guatemalans are more frequently targeted by criminals than the rest of the Guatemalan population.  The BIA concluded that they are not:  "[V]iolence and crime in Guatemala appear to be pervasive at all socio-economic levels."  <u>A-M-E-</u>, 24 I. & N.

7

Dec. at 74-75.  Moreover, it matters that the petitioners'
self-definition as a social group for asylum purposes
depends on no disadvantage other than purported visibility
to criminals.  When the harm visited upon members of a group
is attributable to the incentives presented to ordinary
criminals rather than to persecution, the scales are tipped
away from considering those people a "particular social
group" within the meaning of the INA.

2.  Well-Defined Boundaries.  The BIA reasoned that the
terms "wealthy" and "affluent" are highly relative and
subjective.  Id. at 76.  As the BIA explained, "wealth or
affluence is simply too subjective, inchoate, and variable
to provide the sole basis for membership in a particular
social group."  Id.  If "wealth" defined the boundaries of a
particular social group, a determination about whether any
petitioner fit into the group (or might be perceived as a
member of the group) would necessitate a sociological
analysis as to how persons with various assets would have
been viewed by others in their country.  The BIA also noted
that if one defined "affluent" to include all of those
Guatemalans who did not live in poverty, the group would
make up twenty percent of the population.  A-M-E-, 24 I. &

8

N. at 76 & n.8.[4]  Moreover, because money attracts thieves in the ordinary course, and more money attracts more and better thieves, it would be impractical for IJs to distinguish between petitioners who are targeted or held to ransom because of their class status or merely because that's where the money is.

The BIA's analysis is consistent with existing BIA precedent holding that harm motivated purely by wealth is not persecution.  See In re V-T-S-, 21 I. & N. Dec. 792, 798-99 (B.I.A. 1997), cited by A-M-E-, 24 I. & N. at 72. Our own precedent validates the idea that class status does not establish a social group with sufficient particularity. See Saleh v. U.S. Dep't of Justice, 962 F.2d 234, 240 (2d Cir. 1992) (holding that "poor" Yemeni Muslims are not a particular social group because the group "posses[es] broadly-based characteristics").  The BIA's interpretation

---

[4] Like the petitioners, we agree that a large group can be a "particular social group"; the BIA must not mean that a group's size can itself be a sound reason for finding a lack of particularity.  Instead, we interpret the BIA's observation as merely illustrating how "the concept of wealth is so indeterminate," id. at 76--the purported social group could vary from one to twenty percent of the total population.  This indeterminacy is a relevant consideration in light of In re C-A-'s concerns about groups that are "too loosely defined to meet the requirement of particularity." In re C-A-, 23 I. & N. Dec. at 957.

of the statutory phrase "particular social group" as excluding affluent Guatemalans was therefore reasonable.

**III**

The petitioners argued in their brief to the BIA on remand that "their political beliefs are imputed to them by virtue of their wealth[,] i.e. they must support the status quo as it protects the wealth they have accumulated."  Pet'r BIA Br. 4.  But the petitioners cited no evidence in the record that supports this assertion.  As the BIA correctly concluded, nothing indicated that the individual or individuals who threatened petitioners "had any motive other than increasing their own wealth at the expense of" the petitioners.  A-M-E-, 24 I. & N. at 76.  It was therefore correct for the BIA to hold that the petitioners failed to meet their burden of proof in showing any evidence of a motivation for persecution other than membership in a particular social group.

**CONCLUSION**

10

For the foregoing reasons, we deny the petition for review.