**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2515
_____

MARIO ALEXANDER RENDON VELEZ,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A074-770-194 )
Immigration Judge:  Honorable Margaret R. Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 13, 2011
Before:  SLOVITER, CHAGARES and WEIS, Circuit Judges

(Opinion filed : July 25, 2011)
_____

OPINION
_____

PER CURIAM.

Mario Alexander Rendon Velez, a native and citizen of Colombia, petitions

for review of the order of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's order pretermitting Velez's application for an adjustment of status

1

under 8 U.S.C. § 1255, and denying his application for asylum and other relief.

Velez originally entered the United States in 1994 without inspection, admission, or parole. He filed an asylum application in April 1994, and married Latricia Sherell Delaine, a United States citizen, in December 1994. Delaine filed a Form I-130 petition on Velez's behalf, which was approved in 1995. Velez paid an agency to help him complete his Immigrant Visa application; he then travelled to the United States Embassy in Bogota, Colombia, in January 1996, to complete the visa process. On his return to the United States in May 1996, Velez applied for admission as an intending immigrant with an immigrant visa. The Immigration and Naturalization Service ("INS"), however, determined that he was excludable, charging him with inadmissibility under 8 U.S.C. §§ 1182(a)(6)(C)(i) [INA § 212(a)(6)(C)(i)] (fraud or willful misrepresentation of a material fact), 1182(a)(7)(A)(i)(I) [INA § 212(a)(7)(A)(i)(I)] (no valid immigrant visa or entry document), and 1182(a)(2)(A)(i)(II) [INA § 212(a)(2)(A)(i)(II)] (conviction on a violation of state law relating to a controlled substance). The INS alleged that Velez did not disclose his prior arrests for shoplifting and for drug trafficking in 1994 and 1995 in Question No. 34 of his sworn immigration visa application.[1] The exclusion hearing was held in New York over the course of three days in October 1996, and March and July

---

[1] Velez was arrested for shoplifting in Wayne Township, New Jersey, on September 22, 1994, and in Morristown, New Jersey, on November 22, 1995. Pet'r's App. Vol. 2 at A-323. He was convicted of both shoplifting charges in 1997, and ordered to pay fines. Id. at A-350-51. On July 8, 1995, he was arrested in Maryland for "distribution of cocaine," which the State of Maryland dismissed by nolle prosequi a

1997.  When Velez failed to appear at the hearing in July 1997 (he appeared one hour

---

month later.  <u>Id.</u> at A-322 & A-353.

after the hearing had ended), the Immigration Judge ("IJ") ordered him excluded in absentia. Velez continued to live in the United States. He divorced his first wife in 2005, and, later that year, he married a naturalized citizen, Jackeline Ospina, with whom he has four children.

In 2008, the IJ granted Velez's motion to reopen the exclusion proceedings. During the pendency of reopening proceedings, Velez's second wife filed an I-130 petition, which was approved in 2009. Velez then filed with the United States Citizenship and Immigration Services ("USCIS") a Form I-485 application for adjustment of status and a Form I-601 application for waiver of grounds for inadmissibility under INA § 212(h) and (i). The USCIS denied both applications on April 29, 2009. For relief from exclusion, Velez applied in Immigration Court for an adjustment of status and for asylum, withholding of removal, and for protection under the Convention against Torture ("CAT"), claiming that he feared returning to Colombia because he feared the "guerillas who cause violence." The Government proceeded on its charges that Velez fraudulently or willfully misrepresented a material fact—his prior arrests—to gain entry to the United States, and that he arrived in the United States without a valid passport or any form of identification. It did not proceed, however, on excludability under § 1182(a)(2)(A)(i)(II) (excludable based on his Maryland controlled substance charge), a charge that the Government had withdrawn in March 1997. (See A.R. at 892.)

4

After a hearing at which Velez testified,[2] the IJ rendered a written decision

on January 5, 2010, pretermitting Velez's application for an adjustment of status for lack

of jurisdiction, and denying asylum and other relief. The IJ found Velez to be

inadmissible pursuant to § 1182(a)(6)(C)(i), based on his misrepresentation about prior

arrests on his visa immigration form. In doing so, the IJ rejected Velez's argument that

his failure to disclose his prior arrests on Question No. 34 of the immigrant visa

application was neither willful nor material. See Pet'r's App. Vol. I at A-46.

Specifically, the IJ found that Velez spoke Spanish fluently, the application was written

in both Spanish and English, and that Velez knew that he had been arrested before he

completed the application in 1995 and when he swore to the truth of the application in

1996.[3] Id. The IJ also found that the misrepresentation was material because Velez's

failure to disclose his arrests "shut off a line of inquiry" that was relevant to his eligibility

for admission and would have provided a ground for his exclusion. Id. at A-46-47. The

IJ concluded that Velez was also inadmissible under § 1182(a)(7)(A)(i)(I), finding that

the 1996 immigrant visa was not valid because Velez divorced his first wife in 2005, and

thus, he no longer qualified as "an immediate relative" for immigration purposes. Id. at

A-47. As for Velez's application for adjustment of status, the IJ pretermitted the

---

[2] We need not recite the facts regarding his asylum claim as Velez concedes that "[t]he IJ fact-finding is correct and appears impartial." Pet'r Br. at 9; see IJ fact-findings, Pet'r's App. Vol. 1 at A-48-49.

[3] Velez completed his immigrant visa application on January 26, 1995, well after his 1994 arrest for shoplifting in Wayne Township, New Jersey. Pet'r's App. Vol. 2 at A-211. By the time he swore to the truth of the application on February 5, 1996, he knew

application for lack of jurisdiction because Velez had not returned to the United States in 1996, after being granted advance parole. Id. at A-52.

The IJ denied Velez's claims for asylum and related relief, finding that his membership in his grandfather's trucking business did not constitute a cognizable social group. Pet'r's App. Vol. 1 at A-52. Moreover, even assuming the existence of a cognizable social group, the IJ found that Velez failed to provide evidence linking his alleged problems in Colombia to membership in this "trucking business" group. Id. The IJ also found that Velez failed to demonstrate that he was shot in the leg because of his involvement in the trucking business or because of his stepfather's politics. Id. at A-52-53. The IJ denied CAT relief because Velez did not show a likelihood that he would be tortured upon his return to Colombia, noting that he was able to stay in Colombia for almost six months with no harm, and that his grandfather, the owner of the trucking business, was never targeted for violence and had not been a victim of violence because he owned a trucking business. Moreover, the IJ noted, Velez failed to demonstrate a link between his fear of future torture and the Colombian government's action or failure to act. The BIA agreed with the IJ's reasoning and conclusions and dismissed the appeal. The Board also rejected Velez's asylum claim, made for the first time on appeal, based on membership in a social group of "Colombian business men." This timely petition for review followed.

_____

that he had been arrested for shoplifting twice and for the Maryland drug charge.

We have jurisdiction over the BIA's final order of removal pursuant to 8 U.S.C. § 1252. We review the decision and reasoning of the IJ to the extent the BIA deferred to or adopted it; otherwise, we consider only the decision of the BIA. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Legal or constitutional questions are subject to de novo review. Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). We must uphold the agency's factual findings, including its findings as to whether Velez demonstrated past persecution or a well-founded fear of future persecution, if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). We will reverse a finding of fact only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Velez's first claim challenges the determination by the IJ and the BIA that no jurisdiction existed to review his adjustment of status petition, originally filed before the USCIS and denied by the USCIS in 2009, during the pendency of his exclusion proceedings in immigration court. Velez's argument rests on the premise that the law in 1996, prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) ("IIRIRA"), applies in his case. He asserts that under pre-IIRIRA law, the IJ had jurisdiction to consider adjustment of status in exclusion proceedings. The Government counters that both pre-IIRIRA and post-IIRIRA law barred the IJ's adjudication of Velez's previously denied application for adjustment of status because he failed to satisfy the exception to

7

the jurisdictional bar. We agree. Under pre-IIRIRA law, the IJ lacks jurisdiction to consider adjustment of status in exclusion proceedings, except in cases where the alien, having first been inspected and admitted into the U.S. applied to adjust status and then departed the country under a grant of advance parole pursuant to 8 U.S.C. § 1182(d)(5) (1994). In re Castro-Padron, 21 I. & N. Dec. 379, 380 (BIA 1996); Succar v. Ashcroft, 394 F.3d 8, 17 & n.12 (1st Cir. 2005); see also 8 C.F.R. §§ 245.2(a) and 236.4 (1995). The applicable law under IIRIRA is essentially the same.[4] Zheng v. Gonzales, 422 F.3d 98, 119 & n.16 (3d Cir. 2005) (preserving the narrow exception in In re Castro-Padron). Here, there is no evidence that Velez applied for an adjustment of status in 1996, based on his first wife's approved I-130 petition. As important, there is no evidence that Velez returned to Colombia in January 1996 under a grant of advance parole.[5] See 8 C.F.R. §

---

[4] "In the case of an arriving alien who is placed in removal proceedings, the [IJ] does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien *unless*: (A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States; (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status; (C) The application for adjustment of status was denied by USCIS; and (D) DHS placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application." (emphasis added) 8 C.F.R. § 1245.2(a)(1)(ii).

[5] We note that although the attorney who filed Velez's motion to reopen in April 2008 affirmed that he attached a copy of a grant of advance parole as "Exhibit H," there is no such document or "Exhibit H" attached to his affirmation. (see Affirmation of Jorge Guttlein, Esq.[in support of motion to reopen], A.R. 825; Pet'r's App. at A-675.) Counsel stated further in his affirmation that Velez "supports his motion to reopen with declarations and other evidentiary materials. . . . See Exhibits A though G," (see A.R. 828) with no mention of an "Exhibit H." (A.R. at 828; Pet'r's App. at A-678.) Velez does not argue in his brief that there is documentation of a grant of advance parole, and

8

1245.2(a)(1)(ii)(B) (listing a grant of advance parole as one of the conditions pursuant to which an IJ would have jurisdiction to adjudicate an arriving alien's application for adjustment of status during exclusion proceedings). Moreover, there is no record evidence that Velez departed the country at all after he filed for adjustment of status in 2008, and there is no evidence that he was granted advance parole in 2008. Based on the foregoing, we conclude that the BIA did not err in affirming the IJ's denial of adjustment of status for lack of jurisdiction.

Turning to the question of excludability, Velez raises four claims regarding the USCIS's denial of his application for a Form I-601 waiver of excludability. See Pet'r Br. at 29-48. He asserts that the USCIS wrongly denied his application for a waiver pursuant to 8 U.S.C. § 1182(h) [INA § 212(h)], because his criminal offenses do not qualify as crimes under pre-IIRIRA law. Pet'r Br. Claims Nos. 2 & 3. Next, he claims that the USCIS wrongly denied him a waiver of the "misrepresentation" charge under 8 U.S.C. § 1182(i)(1) [INA § 212(i)(1)], even though there was no hardship requirement under pre-IIRIRA law and the equities weighed in his favor. Pet'r Br., Claim No. 4. Velez also claims that he is eligible for a waiver pursuant to the former 8 U.S.C. § 1182(c) [INA § 212(c)] and current § 1182(h) [INA § 212(h)], assuming that he is deemed to have committed criminal activity not subject to the exceptions under § 1182(a)(2)(A)(ii) [INA § 212(a)(2)(A)(ii)]. Pet'r Br., Claim No. 5.

we find none, in the administrative record.

9

Velez raised the same waiver claims in his appeal before the BIA, but the BIA did not address or decide them.[6] Typically, remand could be warranted in a case like this, when the BIA failed to analyze or render a decision on any of the waiver claims. See Kayembe v. Ashcroft, 334 F.3d 231, 238 (3d Cir. 2003) ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning"). Remand, however, "is not required when it would be an idle and useless formality." Yuan v. Att'y Gen., --- F.3d ---, 2011 WL 1519200, at *5 (3d Cir. Apr. 22, 2011) (internal quotation marks and citation omitted).

We conclude that it would be "an idle and useless formality" to remand Velez's waiver claims to the BIA. As the Government correctly points out, neither this Court nor the Board (or the IJ) has jurisdiction to review USCIS decisions. See 8 U.S.C. §§ 1182(h) ("[n]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection") and 1182(i) ("[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph [1182(i)](1)"). As for Velez's fifth waiver claim, he appears to want a new ruling from us—and before us, the BIA—on the issue of the § 1182(h) [INA

---

[6] Velez did not apply for any type of waiver before the IJ. He did, however, raise the question of a waiver under INA § 212(i) during the course of the hearing on his fraudulent misrepresentation charge held on September 2, 2009. Pet'r's App. at A-213. The IJ declined to consider the "theoretical" issue of a waiver, reasoning that because no jurisdiction existed to consider Velez's adjustment of status, the IJ lacked jurisdiction to consider the waiver question. Id.

§ 212(h)] waiver. The Government, however, withdrew the charge alleging his excludability under § 1182(a)(2)(A)(ii) to which the § 1182(h) waiver would apply. Because the charge was withdrawn, no argument or testimony was taken concerning the charge and the IJ did not rule on it sua sponte. Thus, there is nothing for the BIA to review. See 8 C.F.R. § 1003.1(b)(1) (Board's appellate jurisdiction in exclusion cases is limited to review of decisions by an immigration judge). Even if the claim was properly before the BIA, any error on the Board's part in failing to consider it is harmless based on the BIA's determination that Velez was excludable on other independently justifiable grounds. See Li Hua Yuan v. Attorney General, --- F.3d ---, 2011 WL 1519200, at *6 (holding that harmless error is applicable to judicial review of immigration decisions).

Turning to Velez's asylum claims, upon thorough review of the record, we conclude that substantial evidence supports the BIA's (and the IJ's) denial of asylum relief.[7] The record does not compel a conclusion contrary to the agency's that Velez was not persecuted on the basis of a political opinion imputed or attributed to him. Although Velez suffered a frightening drive-by shooting and was shot, the IJ's finding that she could not conclude that the incident was an act of persecution is supported by the lack of evidence in record. There is insufficient circumstantial evidence from which a reasonable juror could infer a motive (or motives ) on the part of the unknown assailants that warrants asylum relief. See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir.

---

[7] Velez has not challenged the denial of withholding of removal or of CAT relief in this Court. Hence, we will not review the BIA's decisions as to these forms of relief.

2009) (noting that in a mixed motive case, "asylum may not be granted if a protected ground is only an incidental, tangential, or superficial reason for persecution of an asylum applicant" (internal quotation marks omitted)). Velez's alleged membership in a social group of Colombians perceived to be wealthy, particularly his assertion that his family lived on a farm where they oversaw or managed farm workers, is not based on any facts in the record. In any event, contrary to Velez's assertions, belonging to a wealthy class is not a cognizable social group for asylum purposes. See Ucelo-Gomez v. Mukasey, 509 F.3d 70, 73 (2d Cir. 2007) (per curiam) (holding that status as affluent Guatemalans allegedly targeted because of their wealth was not a particular social group). Furthermore, Velez's membership in his family's trucking business lacks an immutable characteristic sufficient to constitute a protected social group. Escobar v. Gonzales, 417 F.3d 363, 367 (3d Cir. 2005) ("[M]embership in a particular social group can be attributed to either: (1) those who possess immutable characteristics such as race, gender, or a prior position, status, or condition; or (2) those who possess a characteristic that is capable of being changed but is of such fundamental importance that individuals should not be required to modify it, e.g., religion").

As for the BIA's well-founded fear of future persecution determination, we conclude that there is nothing in the record that compels us to draw a conclusion different from the Board's because Velez was able to travel to Colombia and stay there for almost four months without harm and his grandfather was never harmed by guerillas affiliated with the illegal drug trade. As for Velez's claim that the IJ and the BIA erred in requiring

12

corroboration of his testimony that he held a well-founded fear of future harm, we find nothing in the record to indicate that the agency required such corroboration. Rather, the IJ merely commented on the probity of Velez's proffered evidence of his family's refugee status in Canada, noting that the bare documentation of the fact of refugee status, without more, did not "in any way corroborate the applicant's fear of harm." Pet'r's App. at A-53. Notably, Velez did not testify about the grounds for his family's refugee status and he did not attest to any such particulars in his asylum affidavit.

For the foregoing reasons, we will deny the petition for review.