Ubando v. Sessions

BIA
Cheng, IJ
A088 428 690

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of May, two thousand seventeen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge,*
> JON O. NEWMAN,
> PIERRE N. LEVAL,
> > *Circuit Judges.*

_____

GUERRA O. UBANDO, AKA OBANDO LOPEZ,
> *Petitioner,*

v.

JEFFERSON B. SESSIONS III*, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

15-3714
NAC

_____

FOR PETITIONER:             Joshua E. Bardavid, New York, N.Y.

FOR RESPONDENT:             Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Song Park, Senior Litigation Counsel;

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions III is automatically substituted for former Attorney General Loretta E. Lynch as Respondent.

Sunah Lee, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, and the matter is REMANDED for further consideration.

Petitioner Guerra O. Ubando, a native and citizen of Guatemala, seeks review of an October 20, 2015, decision of the BIA, affirming a May 19, 2014, decision of an Immigration Judge ("IJ") denying Ubando's application for withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Guerra O. Ubando,* No. A088 428 690 (B.I.A. Oct. 20, 2015), *aff'g* No. A088 428 690 (Immig. Ct. N.Y. City May 19, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014); *Edimo-Doualla v. Gonzales*, 464 F.3d 276, 281-83 (2d Cir. 2006). The only issue before us is the agency's denial of

withholding of removal.  Ubando withdrew his application for asylum and does not challenge the denial of CAT relief.

Ubando does not allege past persecution and seeks relief based on his fear of future persecution.  An applicant seeking withholding of removal must establish that his fear of future persecution is "*on account of* race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42) (emphasis added); *see also Castro v. Holder*, 597 F.3d 93, 100 (2d Cir. 2010) (explaining that the burden is on the "applicant to establish a sufficiently strong nexus to . . . [a] protected ground[]"); 8 C.F.R. § 1208.16(b)(2).  An applicant must establish that the protected ground "was or will be at least one central reason for" the claimed persecution.  8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); *see also In re J-B-N- and S-M-*, 24 I. & N. Dec. 208, 212 (B.I.A. 2007); *In re C-T-L-*, 25 I. & N. Dec. 341, 346-48 (B.I.A. 2010) (holding that the "one central reason" standard applies to withholding of removal).  Because the agency assumed that Ubando's family is a cognizable social group, we first address whether Ubando's other proposed group of "returning immigrants with debts to smugglers with government ties" is cognizable, and then address the agency's nexus finding, that

3

is, whether Ubando's alleged fear of persecution in Guatemala is *on account of* a protected ground.

Ubando argues that it is more likely than not that he will face future persecution on account of his membership in social groups, specifically, (1) returning immigrants indebted to smugglers, and (2) family members of people who have spoken out against the Guatemalan government. These grounds are addressed in turn.

## I.    Social Group of Indebted Returning Immigrants

The agency reasonably concluded that Ubando did not establish that "returning immigrants with debts to smugglers" was a social group. To be cognizable, a social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014). An "immutable characteristic" is "one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled on other grounds by INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *accord Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342 (2d Cir. 2006); *see also Ucelo-Gomez v. Mukasey*,

4

509 F.3d 70, 72-73 (2d Cir. 2007). "'Particularity' refers to whether the group is 'sufficiently distinct' that it would constitute 'a discrete class of persons.'" *Matter of W-G-R-*, 26 I. & N. Dec. 208, 210 (B.I.A. 2014) (quoting *Matter of S-E-G-*, 24 I. & N. Dec. 579, 584 (B.I.A. 2008)). Social distinction requires that the shared traits be sufficient for the group to "be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240; *Matter of W-G-R-*, 26 I. & N. Dec. at 216; *Paloka*, 762 F.3d at 196 ("[W]hat matters is whether society as a whole views a group as socially distinct, not the persecutor's perception.").

Ubando argues that the "characteristics of [this group] are immutable, unchangeable, and sufficiently visible to both the persecutor and the community." The agency applied the correct criteria, and we discern no error in its conclusion that Ubando did not establish that "returning immigrants with debts to smugglers" is a cognizable social group, as the group is neither immutable nor socially distinct. Ubando himself testified that "What [he] has is a debt, and if [he] pay[s] that debt, then [he's] free." And while Ubando argues that the group is socially distinct because others similarly situated have been targeted, that would not make those individuals a cognizable group. In other words, members would not be targeted because

5

of their group membership; instead, they would form a group only because they have been targeted. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 242-43; *see also Ucelo-Gomez,* 509 F.3d at 73 ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group'. . . ."). Accordingly, we decline to reach the agency's alternative determination that Ubando could not demonstrate a nexus between this proposed group and the harm he fears. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976).

## II. Social Group of Family Members

However, we discern error in the agency's determination that Ubando "failed to meet his burden of demonstrating a likelihood of persecution based on membership in" his "family social group." Certified Administrative Record ("CAR") 4. As noted above, an applicant for withholding of removal "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the claimed persecution. 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); *In re C-T-L-*, 25 I. & N. Dec. at 346-48.

6

Ubando contends that he will likely be targeted because of his familial ties to his father, who spoke out against the government. Ubando primarily argues that the 1988 murder of his uncle, and the subsequent murders of another uncle and that uncle's wife in 2000, which he suspects were perpetrated by the Guatemalan government, provide evidence that he will be targeted.

The agency's rejection of Ubando's family social group claim is problematic for two reasons. First, the BIA's opinion includes the following:

> As noted in the [I.J.'s] decision, the respondent was approximately one-year old when his father spoke out against the government, and his father moved to a neighboring country before the respondent reached the age of four (I.J. at 6). The record does not demonstrate that the respondent or his family members were subsequently harmed in Guatemala or that they would face a likelihood of harm on account of his father's criticism of the government many years ago (I.J. at 6-7). *See generally Matter of A-E-M-*, 21 I&N Dec. 1157 (BIA 1998) (reasonableness of an alien's fear of persecution is reduced when close family members remain in native country unharmed for a long period of time after alien's departure).

CAR 4 (internal footnote omitted).

This passage omits any reference to the IJ's finding that one of the Petitioner's uncles was murdered in 1988, *see* CAR 20. More significantly, by stating in the second sentence that "[t]he record does not demonstrate that the respondent or his

7

family members were subsequently [*i.e.*, after the petitioner was four, in 1991 or 1992] harmed," the BIA's opinion appears to overlook the petitioner's testimony, all of which the IJ credited, *see* CAR 22, that another uncle and that uncle's wife were murdered in 2000, *see* CAR 168. In colloquy with counsel for the Petitioner and the Government, the IJ appeared to acknowledge that these murders occurred in 2000. *See id.* 180. Ubando reads the second sentence quoted above, beginning "[t]he record does not demonstrate," as intending to deny the fact that family members had been harmed, *see* Br. for Petitioner at 24; the Government reads the sentence as intending to deny only the claimed reason for the murders, *i.e.*, that the murders were "on account of" the father's criticism of the government, *see* Br. for Respondent at 33. The BIA's parenthetical discussion of *Matter of A-E-M-*, 21 I. & N. Dec. 1157 (BIA 1998) suggests that the Petitioner's reading has much to recommend it. At the very least, the absence of any mention in the BIA's opinion of the two murders in 2000 leaves this matter in doubt.

Second, the IJ relied on the facts that Ubando was an infant when his uncle was murdered in 1988 and that Ubando encountered no harm in Guatemala during the 10 years he lived there after his father fled. *See* CAR 24. However, the fact that those who murdered the Petitioner's relatives did not harm him while he

8

was a child does not necessarily mean that he would not face harm were he to return as an adult.

Because the BIA erred in appearing to state that there was no evidence of harm to the Petitioner's relatives after the Petitioner reached the age of four, and because we cannot be sure how the BIA would assess the likelihood of harm to the Petitioner as an adult after the BIA acknowledges the two murders in 2000, we remand for further consideration of the Petitioner's claimed fear of persecution based on family membership.

For the foregoing reasons, the petition for review is GRANTED, and the matter is remanded for further consideration.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9