Ruiz-Hernandez v. Barr

BIA
Straus, IJ
A206 714 879

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of February, two thousand twenty.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

ILEANA MELISSA RUIZ-HERNANDEZ,
> *Petitioner,*

> v.                                          17-2298
>                                             NAC

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:           Jon E. Jessen, Law Offices Jon E. Jessen LLC, Stamford, CT.

FOR RESPONDENT:           Joseph H. Hunt, Assistant Attorney General; Holly M. Smith, Senior Litigation Counsel; Jesse Lloyd Busen, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Ileana Melissa Ruiz-Hernandez, a native and citizen of Honduras, seeks review of a June 26, 2017, decision of the BIA affirming a December 15, 2016, decision of an Immigration Judge ("IJ") denying Ruiz-Hernandez's application for asylum and withholding of removal. *In re Ileana Melissa Ruiz-Hernandez*, No. A 206 714 879 (B.I.A. June 26, 2017), *aff'g* No. A 206 714 879 (Immig. Ct. Hartford, CT Dec. 15, 2016). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, where the BIA's opinion closely tracks the IJ's reasoning, we have reviewed both the BIA's and the IJ's decisions. *See Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008). The applicable standards of review are well established: the Court reviews factual findings for substantial evidence and legal issues de novo. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

2

To obtain asylum or withholding of removal, Ruiz-Hernandez was required to establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the claimed persecution.  8 U.S.C. §§ 1158(b)(1)(B)(i) (asylum), 1231(b)(3)(A) (withholding); *Matter of C-T-L*, 25 I. & N. Dec. 341, 346 (B.I.A. 2010) (holding that the "one central reason" standard also applies to withholding of removal).  Ruiz-Hernandez asserts that she was persecuted on account of her membership in the social group of defenseless, Honduran women.  To constitute a particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014); *see Paloka v. Holder*, 762 F.3d 191, 195–97 (2d Cir. 2014).  An "immutable characteristic" is one that members of the group "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 72-73

3

(2d Cir. 2007) (internal quotation marks omitted). "Particularity refers to whether the group is sufficiently distinct that it would constitute a discrete class of persons." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 210 (B.I.A. 2014) (internal quotation marks omitted). "To be socially distinct, a group . . . must be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240.

We review for substantial evidence whether an applicant was targeted on account of group membership, *see Edimo-Doualla v. Gonzales,* 464 F.3d 276, 282 (2d Cir. 2006), but review the agency's determination of whether a group is cognizable de novo, *see Paloka*, 762 F.3d at 195. We find no error in the agency's conclusion that Ruiz-Hernandez's proposed social group of defenseless, Honduran women is not cognizable, or in its determination that she was not targeted based on her membership in that proposed social group.

In an analogous context, we have agreed with the BIA's determination that a group based on wealth is not sufficiently particular: "When the harm visited upon members of a group is attributable to the incentives presented to ordinary

4

criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA." *Ucelo-Gomez*, 509 F.3d at 73. Such is the case here. Ruiz-Hernandez argues that her group is distinguished based on gender, claiming that the agency "failed [to] consider the social distinction and particularity of women victims when compared to that of male victims of gang violence," but she does not establish that the characteristic of being a "defenseless woman" has a "commonly accepted definition[]" in Honduran society such that the social group has a "definable boundar[y]." *Matter of W-G-R-*, 26 I. & N. Dec. at 214. We thus perceive no error in the agency's determination that a social group of defenseless, Honduran women was not cognizable. *See Paloka*, 762 F.3d at 195–96.

In addition, even if such a group were cognizable, Ruiz-Hernandez did not demonstrate that criminals targeted her on account of her membership in that group, as opposed to ordinary criminal motives. Her written statement explained that she fled Honduras "because of the high crime there," that she was a victim of several assaults, and that the area

5

where she worked was gang-infested. And her testimony was that her family members and neighbors had also been crime victims and that her assailants never told her why she had been targeted. This testimony was significant; it demonstrated that the criminality she feared was indiscriminate and not related to her social group. Although Ruiz-Hernandez's country-conditions evidence established that Honduras has persistent problems with violence, extortion, and police corruption, it did not demonstrate that women, particularly defenseless women, are targeted by criminals more than other members of society.

In sum, Ruiz-Hernandez established only that she was victimized by criminals in a high-crime neighborhood in a country plagued by violence. But status as a crime victim, without more, does not establish a nexus to a protected ground. *See Melgar de Torres v. Reno*, 191 F.3d 307, 314 (2d Cir. 1999) ("general crime conditions" do not lend support to an asylum claim because they are not an "enumerated ground."); *Ucelo-Gomez*, 509 F.3d at 73.

Because Ruiz-Hernandez did not establish either a cognizable social group or that her assailants targeted her

6

for any reason other than general criminal motives, she did not establish eligibility for asylum or withholding of removal. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i) (asylum), 1231(b)(3)(A) (withholding).

For the foregoing reasons, the petition for review is DENIED. All pending motions are hereby DENIED and stays are LIFTED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

7