21-6022
Cespedes v. Garland

BIA
Roach, IJ
A201 580 336

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand twenty-three.

PRESENT:
> **GERARD E. LYNCH,**
> **MICHAEL H. PARK,**
> **WILLIAM J. NARDINI,**
> *Circuit Judges.*

_____

**IRVIN ACAPHELUS CESPEDES,**
> *Petitioner,*

> v.                                                              **21-6022**
                                                                   **NAC**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

_____

**FOR PETITIONER:**             Craig Relles, Esq., White Plains, NY.

**FOR RESPONDENT:** Brian M. Boynton, Acting Assistant Attorney General; Anthony C. Payne, Assistant Director; Neelam Ihsanullah, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Irvin Acaphelus Cespedes, a native and citizen of Jamaica, seeks review of a December 15, 2020, decision of the BIA affirming an August 18, 2020, decision of an Immigration Judge ("IJ") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Irvin Acaphelus Cespedes,* No. A201 580 336 (B.I.A. Dec. 15, 2020), *aff'g* No. A201 580 336 (Immig. Ct. N.Y. City Aug. 18, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances, we have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

2

**A. Withholding of Removal**

To establish eligibility for withholding of removal, an applicant must show that he "will more likely than not" be persecuted "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b)(1)(iii), (2); *see also* 8 U.S.C. § 1231(b)(3)(A). The agency here reasonably found that Cespedes failed to establish that he was or likely would be targeted on account of his political opinion and that he failed to demonstrate that his proposed particular social group of "young Jamaican men who refuse to participate in the system of orders and therefore are subject to violence" was cognizable.

**1. Political Opinion**

To demonstrate that persecution (past or prospective) bears a nexus to an applicant's political opinion, "[t]he applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political belief," rather than merely from the persecutor's own opinion. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005). "The persecution may also be on account of an opinion *imputed* to the applicant by the persecutor, regardless of whether or not this imputation is accurate." *Hernandez-Chacon v.*

3

*Barr*, 948 F.3d 94, 102 (2d Cir. 2020). "[O]pposition to criminal elements such as gangs, even when such opposition incurs the enmity of these elements, does not thereby become *political* opposition simply by virtue of the gang's reaction." *Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 201 (2d Cir. 2021).

Cespedes's testimony established that gang members targeted him because he refused to attend a recruitment meeting and because he objected to the amount he was paid for work performed for the gang. His refusal to attend a recruitment meeting "without more does not constitute a political opinion." *Id.* at 200 (quotation marks omitted). Further, while Cespedes objected to the amount he was paid for work, he did not object to the work itself, and thus did not show that his actions were "rooted in any sort of disagreement with the policies the[] [gangs] seek to impose nor any ideology they espouse" as required to demonstrate that his actions "took on a political dimension by transcending mere self-protection." *Id.* at 203. The fact that the gang that targeted him had ties to a political party or government counselor alone was insufficient to establish that Cespedes was targeted on account of his political opinion. *See id.* at 199 ("Nor is it sufficient that the alleged opinion merely has some trifling political dimension."). Accordingly, the agency did not err in finding that Cespedes failed to establish that he was or

4

would be targeted on account of an anti-gang or an imputed anti-gang political opinion. *See id.* at 202–03.

## 2. Social Group

To constitute a particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014); *see also Paloka v. Holder*, 762 F.3d 191, 196–97 (2d Cir. 2014); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 72–74 (2d Cir. 2007) (per curiam). An immutable characteristic is one that members of the group "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Ucelo-Gomez*, 509 F.3d at 72–73 (quotation marks omitted). "Particularity refers to whether the group is sufficiently distinct that it would constitute a discrete class of persons." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 210 (B.I.A. 2014) (quotation marks omitted). "To be socially distinct, a group . . . must be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240.

The agency did not err in concluding that Cespedes's proposed social group of "[y]oung Jamaican men who refuse to participate in the system of orders and

5

therefore are subjected to violence" was not cognizable because, although "Jamaican" and "men" are immutable characteristics, the group was not defined with sufficient particularity. Cespedes's proposed group was defined in part by persecutory conduct, but social groups "must exist independently of the persecution," *Paloka*, 762 F.3d at 196 (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 215), and he did not define the age boundary for "young," which was particularly important given that he was in his late teens when he first faced harm but was in his 40s when he sought asylum. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 239 (requiring applicant "provide a clear benchmark for determining who falls within the group"); *see also Ucelo-Gomez*, 509 F.3d at 73. The agency also did not err in finding Cespedes's proposed group similar to that in *Matter of S-E-G-*, where the BIA held that Salvadoran youth who rejected or resisted recruitment efforts by the Mara Salvatrucha gang did not constitute a "particular social group" because the group lacked the required particularity when it could be made up of "a potentially large and diffuse segment of society, and the motivation of gang members in recruiting and targeting young males could arise from motivations quite apart from any perception that the males in question were members of a class." 24 I. & N. Dec. 579, 585 (B.I.A. 2008); *see also Ucelo-Gomez*, 509 F.3d at 73 ("When the harm

visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' . . . ."); *cf. Quintanilla-Mejia v. Garland*, 3 F.4th 569, 589-91 (2d Cir. 2021) (pointing to *Matter of S-E-G-* and holding that putative social groups in El Salvador of former gang members who actively distanced themselves from the gang and worked to oppose them, and who work to rehabilitate youth to prevent joining gangs, were not defined with particularity or socially distinct).

For these reasons, the agency did not err in concluding that Cespedes's proposed social group lacked the requisite particularity to be cognizable. Moreover, as the agency alternatively noted, Cespedes failed to demonstrate his membership in his proposed group given his testimony that he worked for the gangs for a time and principally objected not to the work, but to the payment. *See Paloka*, 762 F.3d at 195 ("To succeed on a particular social group claim, the applicant must establish both that the group itself was cognizable, and that the alleged persecutors targeted the applicant 'on account of' her membership in that group . . . ." (citations omitted)).

Because Cespedes did not satisfy his burden of showing that the harm he

7

suffered and fears was or likely would be on account of a protected ground, the agency did not err in denying withholding of removal. We do not reach the alternative findings for denying that relief. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**B. CAT Claim**

Unlike withholding of removal, CAT relief does not require a nexus to any ground. *See* 8 C.F.R. § 1208.16(c)(2). To be eligible for CAT relief, an applicant is required to show that he would "more likely than not" be tortured with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see Khouzam v. Ashcroft*, 361 F.3d 161, 170–71 (2d Cir. 2004).

Cespedes did not exhaust and has otherwise abandoned any challenge to the IJ's dispositive finding that his evidence did not demonstrate that gangs will likely torture him if removed to Jamaica; thus, our review does not reach that finding. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 119–22 (2d Cir. 2007) (providing that issue exhaustion is mandatory); *see also Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1, 545 n.7 (2d Cir. 2005) (noting that the Court will not consider

abandoned issues that are not adequately raised in briefs). Because that finding is dispositive of CAT relief, we do not reach the agency's alternative finding that he failed to establish government acquiescence. *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a); *see also Bagamasbad*, 429 U.S. at 25.

**C. Due Process Claim**

Cespedes argues for the first time that he may have been deprived of due process at his hearing as a result of language barriers. As the Government observes, Cespedes failed to exhaust this argument before the BIA. We accordingly do not consider it. While the BIA does not have jurisdiction to adjudicate constitutional issues, it can "clearly can address procedural defects in deportation proceedings." *United States v. Gonzalez-Roque*, 301 F.3d 39, 47–48 (2d Cir. 2002). Such claims must be administratively exhausted before they are raised in this Court. *See id.; see also Valbrun v. Hogan*, 439 F.3d 136, 137 (2d Cir. 2006). Accordingly, because Cespedes's due process argument challenges the fairness of process before the IJ and could have been resolved by the BIA, we will not consider it in the first instance. *See Gonzalez-Roque*, 301 F.3d at 47–48.

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court