**10-2584-ag**
**Gashi v. Holder**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued:  October 18, 2011                    Decided: December 18, 2012)

Docket No. 10-2584-ag

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

AZEM GASHI, aka Antonio Boca,

            Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

            Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:    KEARSE, LEVAL, and CHIN, *Circuit Judges*.

            Petitioner Azem Gashi petitions for review of an order of the Board of Immigration Appeals affirming the decision of an Immigration Judge, which denied Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture.  Petitioner argues that the Board and the Immigration Judge incorrectly found him ineligible because the group in which he claimed membership, by reason of which he suffered persecution, cannot qualify as an eligible "particular social group" under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(A).  The Court of Appeals (Leval, *J.*) agrees with Petitioner that the agency employed an incorrect standard of law and concludes that remand is necessary. Accordingly, the order of the Board is **VACATED**, and the case is **REMANDED** for further proceedings.

H. Raymond Fasano, Madeo & Fasano, New York, NY, for *Petitioner*.

Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation (Douglas E. Ginsburg, Assistant Director, *on the brief*), for Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, for *Respondent*.

LEVAL, *Circuit Judge*:

Azem Gashi, a citizen of Serbia,[1] petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the oral decision of Immigration Judge ("IJ") Alan A. Vomacka, which denied Gashi's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Azem Gashi*, No. A 099-686-927 (B.I.A. June 3, 2010) ("BIA Decision"), *aff'g In re Azem Gashi*, No. A 099-686-927 (Immig. Ct. N.Y. City May 16, 2008) ("IJ Decision"). Gashi testified that, in 1998, he and others were attacked by soldiers under the command of Ramush Haradinaj, a leader of the Kosovo Liberation Army ("KLA"). In 2004 and 2005, Gashi met with international officials investigating allegations that Haradinaj and the KLA had committed war crimes during the Kosovo conflict and related to them the details of the attack. Soon thereafter, Gashi was assaulted and threatened, prompting him to flee to the United States. Gashi contends he was targeted by supporters of Haradinaj by reason of his cooperating with the war crimes investigators.

---

[1] Gashi was born in Kosovo, which was a province of Serbia at the time Gashi arrived in the United States in 2006. Kosovo declared its independence in 2008, but some countries have refused to recognize it as an independent state and "[t]he final outcome of that situation is perhaps not completely clear." IJ Decision at 2.

The IJ rejected Gashi's claim of past persecution, explaining that Gashi failed to demonstrate that the abuse he suffered had a sufficient nexus to a protected ground. Of relevance to this petition, the IJ found that the abuse could not be considered to be on account of Gashi's membership in a "particular social group" within the meaning of the governing statute—the Immigration and Nationality Act ("INA")—because of the lack of a socially visible trait identifying membership in the group. The BIA adopted the IJ's reasoning, concluding that Gashi failed to identify a particular social group that fulfilled the elements required for eligibility under the INA.

We do not agree with the IJ's conclusion that members of a group consisting of persons who witnessed Haradinaj's alleged crimes and cooperated with international investigators were not visible to both persecutors and the wider community. Gashi's name was published on a list of potential witnesses against Haradinaj, his fellow villagers were aware that he had spoken with investigators, and other potential witnesses were harassed. These facts satisfied the social visibility requirement for a particular social group. Therefore, we cannot accept the BIA's conclusion that a group consisting of potential witnesses against Haradinaj does not constitute a particular social group.

To the contrary, we conclude that the proposed group of cooperating witnesses is a particular social group under the INA. The proposed group meets the three requirements of having an immutable, common characteristic, having some degree of social visibility, and being defined with sufficient particularity. On remand, the agency must consider whether Gashi is a member of the group, whether the 2005 attacks and threats directed against Gashi amounted to persecution, and, if so, whether that persecution was on account of his membership in the group.

If the agency does find that Gashi suffered past persecution on account of his particular social group membership, then it must afford Gashi a presumption of well-founded fear of future persecution. In the proceedings below, the IJ and the BIA found no past persecution and therefore placed the burden of proving well-founded fear of persecution on Gashi. A finding on remand that Gashi was a victim of past persecution would automatically shift the burden to the Government to prove that Gashi has no well-founded fear of future persecution. We vacate and remand so that the agency may consider these questions in the first instance.

**BACKGROUND**

Gashi fled Kosovo in February 2006 and tried to enter the United States under the Visa Waiver Program using a fraudulent passport. He was refused admission to the United States and was referred to an IJ for "asylum-only" proceedings. Gashi filed his application for asylum, withholding of removal, and CAT relief in July 2006.

Among other claims, Gashi asserted that he suffered past persecution on account of his membership in a particular social group.[2] In the affidavit included with his application, Gashi

---

[2] Gashi made a number of claims in his application which the IJ and the BIA rejected, and which he does not challenge on appeal before this Court. Gashi alleged that he was the victim of past persecution directed against ethnic Albanians by Serbs before 1998. *See* IJ Decision at 3-5. The IJ found that the mistreatment described by Gashi did not constitute persecution, and that, in any event, Gashi had no well-founded fear of future persecution by Serbs because of changed country conditions following the end of the Kosovo conflict in 1999. *See id.* at 3-8. Gashi did not appeal this conclusion to the BIA.

The IJ also found that the 1998 attack on Gashi and his friends did not constitute persecution, and that the attack was not on account of Gashi's political opinion. *See id.* at 14, 22, 25. The IJ determined that the KLA and the FARK shared the same ultimate political goal of liberating Kosovo from Serbian rule, and he therefore concluded that differences in political opinion did not motivate the KLA attack on Gashi. *See id.* at 22, 24. The BIA agreed with these conclusions. *See* BIA Decision at 2. On appeal, Gashi does not challenge the IJ's findings that the 1998 attacks were not persecution, and that the attacks were not on account of Gashi's political opinion.

4

explained that he and his family were ethnic Albanians living in Kosovo when conflict erupted with Serbia in 1998. Motivated by a desire to end the Serbian oppression of ethnic Albanians, Gashi joined the Armed Forces of the Republic of Kosovo ("FARK") resistance group. Gashi served under the command of Colonel Tahir Zemaj.

During the conflict, the FARK had a number of disagreements with the rival KLA, which also sought to expel the Serbs from Kosovo. Gashi testified that he and three friends, all of them members of the FARK, were caught in the crossfire of the FARK-KLA dispute when they were stopped and attacked by a KLA unit on July 4, 1998. The KLA forces, which were commanded by Ramush Haradinaj and another individual referred to as "Togeri," or "Lieutenant," shepherded Gashi and his friends to the front yard of a house used by the KLA. *Gashi v. Holder*, No. 10-2584, Administrative Record ("A.R.") at 124, 610 (Sept. 14, 2010). Haradinaj took out a pistol and shot Gashi in his right ankle, and then he and his brother beat Gashi and his friends with metal rods and the butts of submachine guns. Gashi's friend, Idriz, was beaten with a baseball bat.

Afterward, Gashi and his friends were ordered to strip to their underwear and run to a village called Kodrali while Togeri followed in a car and fired a submachine gun above their heads. Haradinaj wanted the wounded Gashi and his injured friends to serve as a warning to the rival FARK commander, Zemaj. As Gashi and his friends passed through a village called Irzniq where other KLA units were stationed, Togeri shouted out that Gashi and his friends were

Finally, Gashi initially sought relief under the CAT. The BIA ruled that Gashi had "not presented any persuasive arguments on appeal as to why we should reverse the Immigration Judge's finding that he failed to meet his burden of proving that it is more likely than not that he would be tortured upon returning to Serbia." *Id.* Gashi does not challenge the BIA's denial of his CAT claim.

5

Zemaj's soldiers and that they should be beaten. The KLA forces attacked Gashi and his friends. At some point, Gashi and his friend Petrit had to support Idriz, who had suffered a head wound. Togeri drove away after Gashi and his friends reached the village Kodrali, where they reunited with a FARK unit and were given medical treatment.

In August 2004, representatives of the United Nations Mission in Kosovo ("UNMIK") visited Gashi's region and inquired about the July 4, 1998 incident. Other villagers directed the representatives to Gashi, who described the attack on himself and his friends. Gashi spoke with the same UNMIK representatives two more times, on November 30, 2004, and on August 25, 2005.

Around August 2005, Gashi noticed an increase in the number of threats he received over the telephone. People in his village who favored the KLA called Gashi a "traitor" and a "troublemaker," and they warned him that he was "messing with serious things." A.R. 611. In September 2005, Gashi was attacked near his house by two masked men, one of whom brandished a knife. Screaming for help, Gashi managed to fight off the assailants and escape to his house. In November 2005, while Gashi was driving, a car approached very quickly, as if to hit him. He received a telephone call that night telling him that his "end will be near." A.R. 612. A month later, in December 2005, Gashi was attacked by three masked men as he accompanied a friend home. One of the men hit him on the head with a metal knob while another said to "[k]ill this dog here." A.R. 612. The masked men ran off when a car passed by and stopped to help Gashi. After receiving another threatening telephone call, Gashi fled to the United States. Gashi did not inform the international investigators of his relocation and did not

testify at Haradinaj's trial before the International Criminal Tribunal for the former Yugoslavia ("ICTY"), at which Haradinaj was acquitted.

After an individual merits hearing on December 14, 2007, the IJ rendered an oral decision on May 16, 2008 denying Gashi's application. The IJ ruled that Gashi had not proven past persecution on account of a protected ground. In relevant part, the IJ concluded that Gashi was not a member of a particular social group because he did not have a trait that was visible to society as a whole. The IJ explained that Gashi was "not from a different ethnic group" and had no observable traits. IJ Decision at 21. The IJ also noted that "many people in Kosovo would be unaware of [his] particular history." *Id.* at 22. Because the IJ also rejected Gashi's assertion that he was persecuted on account of his political opinion, the IJ found that Gashi had failed to show that any of the attacks and threats against him had a nexus to a protected ground. *See id.*

While the absence of a connection between the attacks and a protected ground would have been sufficient to deny Gashi's past persecution claim, the IJ made the additional ruling that the 1998 attack on Gashi and his friends did not rise to the level of persecution. Noting that the KLA forces could have killed Gashi if they had so desired, *id.* at 17, the IJ stated his belief that Gashi was merely "the means to deliver a humiliating message to his commander," *id.* at 25. Furthermore, the IJ stated that the 2005 assaults and threats did not constitute persecution either, but he offered no explanation for this conclusion. *See id.* at 10 ("[T]he recent [2005] threats and assaults against [Gashi] involving The Hague Tribunal . . . do not constitute persecution . . . .").

The IJ also held that Gashi had not shown a well-founded fear of future persecution at the hands of Haradinaj's supporters. While the IJ acknowledged that Gashi had given preliminary statements to UNMIK officials and had been pressured not to testify, the IJ emphasized that

Gashi never testified against Haradinaj. The IJ faulted Gashi for traveling to the United States and making no effort to inform ICTY prosecutors of his relocation. *See id.* at 15. In view of Gashi's decision not to testify and Haradinaj's eventual acquittal, the IJ concluded that Haradinaj and his supporters had no motive to punish Gashi. *See id.* at 18. The IJ therefore ruled that Gashi had not carried his burden of proving well-founded fear of persecution. *See id.* at 19 ("[T]he Court believes the respondent fails to show that at the present time the Haradinaj supporters have a reason to further harm the respondent.").

The BIA affirmed the decision of the IJ. The BIA did not specifically address the IJ's finding that Gashi had no socially visible characteristic. Instead, the BIA stated that it "agree[d] with the Immigration Judge that, as a potential witness against Mr. Haradinaj, the applicant is not a member of a particular social group." BIA Decision at 2. Accordingly, the BIA agreed with the IJ that Gashi had not shown a nexus between the abuse against him and a protected ground. *See id.* The BIA did not consider whether the assaults and threats directed at Gashi in 2005 constituted persecution under the INA.

The BIA also agreed with the IJ that Gashi had failed to meet "his burden" to show a well-founded fear of future persecution. *Id.* The BIA explained that Haradinaj and his supporters had no reason to harm Gashi given Gashi's failure to testify and Haradinaj's acquittal. *See id.*

**DISCUSSION**

"Where, as here, the BIA has adopted and supplemented the IJ's decision, we review the decision of the IJ as supplemented by the BIA. Legal issues, and the application of law to fact, are reviewed *de novo*." *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010) (citation omitted).

8

Because the IJ found Gashi to be credible, we treat the version of past events that Gashi related to the IJ as undisputed fact. *See Delgado v. Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007).[3]

**I. Asylum**

Asylum is a discretionary form of relief available to certain aliens who qualify as "refugees" under the INA. *See* 8 U.S.C. § 1158(b)(1)(A). The INA defines a "refugee" as an alien who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Gashi claims his eligibility results from a fear of persecution on account of his membership in a particular social group consisting of persons who witnessed war crimes by the KLA and Haradinaj and cooperated with authorities investigating those crimes.

For applications filed after May 11, 2005, such as that of Gashi, "the REAL ID Act of 2005 places the burden on the asylum applicant to establish a sufficiently strong nexus to one of the protected grounds by demonstrating that 'race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for

---

[3] The IJ stated in his oral decision that he believed "the credibility of the respondent is not particularly significant to the outcome of the case." IJ Decision at 10. The IJ indicated that many of the events recounted by Gashi could be corroborated by evidence that he spoke with UNMIK officials, the ICTY's indictment of Haradinaj, and marks on Gashi's body consistent with his claims. *See id.* at 10-11. But the IJ also noted a few discrepancies between Gashi's testimony and other accounts of the events. *See id.* at 11-12, 17. The BIA interpreted the IJ's decision "to mean that even assuming the applicant to be credible, which [the IJ] did, the applicant nevertheless failed to meet his burden of proof." BIA Decision at 1. We therefore also assume Gashi to be credible and treat his testimony as establishing the facts, for purposes of this petition.

persecuting the applicant.'" *Castro*, 597 F.3d at 100 (quoting REAL ID Act of 2005 § 101(a)(3), 8 U.S.C. § 1158(b)(1)(B)(i)).

An alien who proves past persecution on account of a protected ground is entitled to a presumption of well-founded fear of future persecution on the basis of the original claim. *See* 8 C.F.R. § 1208.13(b)(1); *Jalloh v. Gonzales*, 498 F.3d 148, 151 (2d Cir. 2007). The Government can rebut the presumption in different ways, such as by showing either that conditions in the alien's native country have changed such that the alien no longer has a well-founded fear of persecution, or that the alien can avoid future persecution by relocating to a different region of his native country. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A)-(B); *Jalloh*, 498 F.3d at 151. The regulations make clear that, "[i]n cases in which an applicant has demonstrated past persecution . . . the [Government] shall bear the burden of establishing by a preponderance of the evidence" the changed country conditions or the feasibility of relocation. 8 C.F.R. § 1208.13(b)(1)(ii).

An alien does not need to prove any past persecution to establish his eligibility for asylum. Proof of a well-founded fear of future persecution on account of a protected ground is sufficient to establish asylum eligibility. *See id.* § 1208.13(b); *see also Huang v. INS*, 436 F.3d 89, 95 (2d Cir. 2006) (if an alien "establishes a well-founded fear of future persecution, he is automatically eligible for asylum"). Absent a showing of past persecution, however, the alien bears the burden of proving that he has a well-founded fear of persecution. *See* 8 C.F.R. § 1208.13(a) and (b)(2)(iii). In addition, an alien who has not shown past persecution also has the burden of proving that it would not be reasonable for him to relocate to a different region of his native country where he could avoid persecution. *See id.* § 1208.13(b)(3)(I).

**II. Gashi's challenge**

Gashi contends the BIA erred in concluding that the category of persons in which he claims membership, providing the basis for his past persecution, did not constitute a "particular social group" within the meaning of the statute. We agree. Accordingly we vacate the BIA's order and remand for further consideration.

**A. Exhaustion**

As an initial matter, the Government argues that Gashi forfeited any claim regarding the elements of a particular social group because he did not raise the issue in his appeal to the BIA. Although it is true that Gashi did not explicitly raise this point in his brief to the BIA, the BIA chose nonetheless to address the issue in its decision and relied on an incorrect legal standard in making its decision. In such circumstances, we have ruled that the BIA "excused" the petitioner's failure to raise the issue, and we proceeded to consider it. *Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296-97 (2d Cir. 2006); *see also Waldron v. INS*, 17 F.3d 511, 515 n.7 (2d Cir. 1993). We do so here as well.

**B. Requirements of a particular social group**

Decisions of the BIA and of this court have addressed the characteristics needed to qualify as a particular social group under the INA. The BIA has ruled that the members must share a common characteristic that is either "beyond the power of the individual to change" or "so fundamental to individual identity or conscience that it ought not be required to be changed." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled in part on other grounds, Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987). This common characteristic, furthermore, must have enough "social visibility" that it identifies members of the group to

11

others in the community, particularly to potential persecutors. *See Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007); *In re C-A-*, 23 I. & N. Dec. 951, 959-60 (B.I.A. 2006); *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991) ("A particular social group is comprised of individuals who possess some fundamental characteristic in common which serves to distinguish them in the eyes of a persecutor—or in the eyes of the outside world in general."). In addition, the proposed group must have "particular and well-defined boundaries." *Ucelo-Gomez*, 509 F.3d at 73.

The BIA held that a group consisting of potential witnesses against Haradinaj does not satisfy those requirements. BIA Decision at 2. The BIA implicitly expressed agreement with the IJ, who ruled that Gashi could not qualify because he did not have any socially visible characteristic because he "is not from a different ethnic group," and because "many people in Kosovo would be unaware of [his] particular history." IJ Decision at 21-22.

Gashi, however, pointed to characteristics that are both immutable and visible in the Kosovar society. As for visibility, Gashi's name appeared on a public list of potential witnesses against Haradinaj compiled by the prosecutor at the ICTY. A.R. 165 (Gashi: "My name is there in that list."; IJ: "Listed as a witness to appear in, at that trial?"; Gashi: "Yes, as a witness."); *cf. In re C-A-*, 23 I. & N. Dec. at 960 (confidential informants against a drug cartel had no social visibility because, "[i]n the normal course of events, an informant against the . . . cartel intends to remain unknown and undiscovered"). People in his village knew that Gashi spoke with UNMIK representatives because they directed the representatives, who sought information about the July 4, 1998 incident, to Gashi. Villagers who sympathized with Haradinaj labeled Gashi a "traitor" and accused him of "messing with serious things" after Gashi's meeting with international investigators in August 2005. A.R. 611. He was attacked twice by masked men,

12

and he received telephone threats warning him that his "end [would] be near." A.R. 611-12. These incidents demonstrate that his identity as one who had cooperated with investigators of Haradinaj was well known in the society and that supporters of Haradinaj sought to terrorize him because of it. Other persons who had cooperated with the investigation of war crimes were similarly targeted, with the consequence that the ICTY prosecutor told a German newspaper in October 2007 that he was "losing witnesses on all sides in the case against Haradinaj" because the potential witnesses were "being seriously threatened." A.R. 632.

These facts sufficiently demonstrate that the group of cooperating witnesses on which basis Gashi claimed eligibility was socially visible to potential persecutors and the wider Kosovar society. *See Ucelo-Gomez*, 509 F.3d at 73.

Gashi's evidence with respect to the nature of the group also satisfied the requirement of immutability, or permanence, of membership. These characteristics include having witnessed war crimes of the KLA and Haradinaj, and having cooperated with investigators on the subject of such war crimes. These characteristics of the group derive from past experience. They "cannot be undone" and are therefore, "by [their] very nature, immutable." *In re C-A-*, 23 I. & N. Dec. at 958; *accord Koudriachova v. Gonzales*, 490 F.3d 255, 261 (2d Cir. 2007). These characteristics also serve to define the social group with sufficient particularity. The number of persons who have given interviews to, or otherwise cooperated with, official war crimes investigators is finite, and undoubtedly quite limited. An individual's membership is also verifiable. *Cf. In re A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 76 (B.I.A. 2007), *aff'd sub nom. Ucelo-Gomez v. Mukasey*, 509 F.3d 70 (2d Cir. 2007), (rejecting a proposed group defined as "affluent Guatemalans" because "the concept of wealth is so indeterminate, the proposed group

13

could vary from as little as 1 percent to as much as 20 percent of the population, or more"). We conclude that Gashi's claim of eligibility is based on a proposed group that satisfies the legal elements of a particular social group under the INA.

Notwithstanding the agency errors noted above, we would not vacate its ruling if the record showed that the agency would have reached the same result without the faulty analysis. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 (2d Cir. 2005). We cannot justify that conclusion.

We recognize that the IJ and the BIA found Gashi did not suffer past persecution because he did not "establish[] a nexus to a protected ground under the [INA]." BIA Decision at 2; *see also* IJ Decision at 22. This, however, was not an alternative ground for denying Gashi's claim. Membership in a group does not constitute a protected ground unless the group qualifies as a "particular social group" under the INA. The reason the IJ and the BIA found no nexus to a protected ground was because they incorrectly believed that the proposed group of cooperating witnesses was not a particular social group. Therefore, this conclusion of the IJ and the BIA was simply another way of expressing the erroneous conclusion we have criticized.

The IJ also stated that "the recent [2005] threats and assaults against [Gashi] involving The Hague Tribunal . . . do not constitute persecution." IJ Decision at 10. Because an alien seeking to prove past persecution must show persecution on account of a protected ground, this finding did constitute an alternative ground for denying Gashi's petition without regard for whether he established membership in a particular social group. If sustainable, the finding would therefore moot the agency's errors as to the standards for the eligibility of a group. But we do not think this finding is sustainable on the present record. In the first place, the IJ offered

14

no explanation why the series of attacks and threats in 2005 were not sufficient to constitute persecution. The IJ's discussion of the 2005 assaults and threats focused instead on the different question of whether they justified a well-founded fear of future persecution. The IJ concluded that, "because [Gashi] did in fact exactly what Mr. Haradinaj supposedly wanted him to do" by fleeing from Kosovo and "accept[ing] the threats," Gashi was unable to show that "at the present time the Haradinaj supporters have a reason to further harm [him]." *Id.* at 18-19. Even if this reasoning were sustainable, which we doubt, it has no bearing on whether the 2005 abuse was itself persecution. Given the unrebutted evidence that Gashi was repeatedly warned, threatened with death, and attacked with deadly weapons including a knife and a metal knob while one attacker urged another to "[k]ill this dog here," A.R. 611-12, we do not see why such abuse does not constitute persecution. The IJ did not indicate what standard of persecution he employed to determine that this level of abuse failed to qualify. Without further explanation justifying the conclusion that the 2005 abuse did not constitute persecution, we cannot accept that this finding moots the error concerning the social group standard. *See, e.g.*, *Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007) ("This Court . . . will not hesitate to vacate and remand where the BIA or IJ analysis is insufficient to determine whether the correct legal standard was applied."); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("[W]e require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful.").[4]

---

[4] The IJ also concluded that the 1998 attack in which Gashi, together with other FARK members, was attacked by Haradinaj and his KLA troops, was shot in the foot, and was beaten with metal rods and the butts of machine guns was not sufficiently serious to constitute persecution. This finding further raises a question as to whether the IJ was employing a valid standard as to what is needed to qualify as persecution, but the finding is irrelevant for purposes

15

Finally, we come to the findings of the IJ and the BIA that Gashi has no well-founded fear of future persecution, which the Government contends both moots this petition and makes remand futile. The IJ and the BIA concluded that Gashi had not proven well-founded fear because he never testified against Haradinaj and, in any event, Haradinaj was acquitted. We do not agree.

The finding that Gashi has no well-founded fear of future persecution is vulnerable for several reasons. First, to the extent it was predicated on Haradinaj's acquittal, leading the agency to conclude that Haradinaj had nothing further to fear from Gashi, Haradinaj's acquittal has since been quashed by the ICTY tribunal, and its prosecutors are preparing to retry him. *See Prosecutor v. Haradinaj*, Case No. IT-04-84-A, Appeals Chamber Judgement, ¶ 50 (July 19, 2010), *available at* http://www.icty.org/x/cases/haradinaj/acjug/en/100721.pdf. Haradinaj and his followers once again have all the same reasons to fear Gashi's testimony and to see to it that he does not testify, as well as to intimidate other potential witnesses by persecuting any person who has, or might, cooperate with the prosecution.

Furthermore, the finding that Gashi has no well-founded fear of future persecution was made under what is probably an incorrect allocation of burden of proof. The IJ placed the burden of proving a well-founded fear of future persecution on Gashi, and found he had not sustained it. If the agency determines on remand that Gashi was persecuted on account of his membership in the group consisting of potential witnesses to Haradinaj's crimes who have

---

of this petition because it does not relate to Gashi's claim based on his membership in a particular social group. This event occurred before Gashi's cooperation with the war crimes investigators. It related to his claim of political persecution. After rejection by the agency, the claim of political persecution was abandoned by Gashi. The agency's rejection of the 1998 shooting and beatings as the basis of a claim has no bearing on the present petition.

16

cooperated with investigative authorities (and we see no reason why it would not reach that conclusion), Gashi will be entitled to a presumption of well-founded fear of future persecution. *See Poradisova*, 420 F.3d at 78. The burden of proof on the issue will shift to the Government. Accordingly, the previous finding that Gashi failed to show a well-founded fear of future persecution neither moots the errors with respect to the particular social group, nor makes a remand futile.

## CONCLUSION

For the above reasons, we grant the petition for review, vacate the BIA's order denying Gashi's claims for asylum and withholding of removal, and remand.[5]

---

[5] The IJ and the BIA denied the withholding of removal claim as an *a fortiori* conclusion after ruling that Gashi had not proved his asylum eligibility. *See* IJ Decision at 25 ("[T]he Court does not believe that the respondent has established a basis for asylum and . . . it would be much more difficult to find a basis for withholding . . . in this case."); BIA Decision at 2 ("Because we agree that the applicant has not met the burden of establishing past persecution or a well-founded fear of persecution on account of one of the protected grounds, he does not satisfy the higher burden of proof for withholding of removal . . . ."). Because the IJ and the BIA's erroneous analysis of Gashi's asylum claim bears on his eligibility for withholding of removal, we also remand the withholding of removal claim. *See Abankwah v. INS*, 185 F.3d 18, 26 (2d Cir. 1999); *see also Manzur*, 494 F.3d at 296.

17