**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2214
_____

EDWIN ADONIS PERAZA,

                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

                                        Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A206-773-442)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 12, 2019
_____

Before: SHWARTZ, KRAUSE, and FUENTES, <u>Circuit Judges</u>.

(Filed: July 12, 2019)
_____

OPINION[*]
_____


SHWARTZ, <u>Circuit Judge</u>.

---

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Edwin Adonis Peraza petitions for review of the Board of Immigration Appeals' ("BIA") order (1) holding that the Immigration Judge ("IJ") did not violate his constitutional right to due process, and (2) affirming the IJ's denial of his asylum application. For the reasons that follow, we will deny the petition.

I

Peraza is a native and citizen of El Salvador. Peraza and his mother arrived in the United States without inspection in 2014, when he was almost fifteen years old. He was charged as a removable alien. He conceded removability and applied for, among other things, asylum. The Department of Homeland Security subsequently detained Peraza in a juvenile facility.[1]

Peraza amended his asylum application and appeared for a merits hearing before the IJ in 2017. He testified that he feared returning to El Salvador for several reasons. First, beginning when he was about thirteen, members of the M-18 gang threatened him because he refused to join them, and the gang killed his cousin who also refused to join. Second, the gang threatened and attacked Peraza including: one time when he was playing soccer and two gang members approached him and hit and scratched him before he was able to escape; various occasions when members threw rocks and threatened him on his way to and from school; and several instances where gang members passed his

---

[1] While his applications for relief were pending, the New York State Family Court, Suffolk County, adjudicated Peraza a juvenile delinquent on a weapons charge and sentenced him to two years' probation. Immigration authorities thereafter detained him in Pennsylvania, and his immigration case was transferred from New York to Pennsylvania. Law students, under the supervision of Drexel Law School faculty, handled Peraza's merits hearing.

house and threatened to kill or beat him. Third, Peraza's mother helped to look for the body of his cousin when he was kidnapped by member of M-18. She was present when the police identified the body so he believed people would think that she cooperated with the police against the gang, and the gang subsequently called her demanding that she pay or give Peraza to the gang. Fourth, after Peraza arrived in the United States, a gang member sent him a Facebook message threatening to kill him. Finally, Peraza got a number of tattoos in the United States and he testified that gangs and police in El Salvador would assume that these tattoos mean that Peraza is a gang member. At various points during Peraza's testimony, the IJ asked Peraza clarifying questions about these events and his family.

The IJ also considered declarations and heard testimony from Peraza's expert and his mother. The IJ permitted the expert to briefly testify about gang activity in El Salvador given that the expert submitted a "very detailed" declaration, A.R. 412**-13**, and even though the IJ determined that the expert had not done any academic work or visited El Salvador in over a decade, and largely prepared by reviewing publicly available information and consulting some Salvadoran government officials. As to Peraza's mother, the IJ instructed Peraza's counsel that they should not elicit testimony that duplicates her declaration, which the IJ had read.

After the hearing, the IJ ruled that Peraza's testimony was not credible because: (1) his testimony about various events—including the soccer incident, the kidnapping and killing of his cousin, and the threats he received at school—differed "factually and sequentially" from the written accounts he provided in support of his applications, A.R.

3

119; (2) the testimony of Peraza's expert would "be given the same weight as country reports," A.R. 122; and (3) the testimony of Peraza's mother was entitled to "very limited weight" because of significant omissions and discrepancies regarding whether the threatening call she received was from the gang, how many times Peraza was attacked outside of school, and whether the gang members strangled him during the soccer field incident. A.R. 123. The IJ added that Peraza failed to adduce evidence that he was eligible for the relief sought. Specifically, the IJ held that Peraza was not eligible for asylum because the threats he received "were [not] so menacing as to rise to the level of past persecution," where the gang did not follow through with their threats, A.R. 163, and Peraza did not show that he would face persecution based upon an anti-gang political opinion or membership in a particular social group.

Peraza appealed, arguing, among other things, that the IJ's frequent questions and limitations interfered with his right to a fair proceeding. The BIA dismissed the appeal, determining that the IJ's actions did not result in "a fundamentally unfair proceeding that prejudiced [Peraza's] applications for relief," A.R. 9, particularly given that the IJ did not unreasonably restrict Peraza's ability to present any evidence, and the IJ's interjections during the hearing clarified responses, provided Peraza the opportunity to respond in further detail, and did not demonstrate bias or hostility. The BIA also held that the IJ did not clearly err in its adverse credibility ruling given the multiple inconsistencies between

4

Peraza's statements and testimony.[2]  Finally, the BIA "agree[d]" with the IJ's "alternative

determination[s]," A.R. 6, that Peraza did not experience past persecution and did not

establish an objectively reasonable fear of future persecution based on membership in a

particular social group, political opinion, or any other protected ground.[3]  Peraza petitions

for review.

II[4]

We first address Peraza's claim that the IJ violated his right to due process by

interrupting his testimony, asking leading questions, and limiting his presentation of

corroborating testimony.[5]  Due process requires that those in removal proceedings receive

"the opportunity to be heard at a meaningful time and in a meaningful manner."  Abdulai

v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (quoting Mathews v. Eldridge, 424 U.S.

319, 333 (1976)).  An alien in removal proceedings "(1) is entitled to factfinding based

on a record produced before the decisionmaker and disclosed to him . . . ; (2) must be

---

[2] The BIA also held that limiting the testimony of Peraza's mother and expert was not unreasonable, that his mother "provided an inconsistent fact pattern," and that the IJ "assigned proper weight to [Peraza's] 'expert' witness."  A.R. 5.

[3] Peraza also sought and was denied withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and protection under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.16(c), 1208.18.  He does not challenge those rulings.

[4] The IJ had jurisdiction over Peraza's immigration proceedings under 8 C.F.R. § 1208.2, and the BIA had jurisdiction over the appeal pursuant to 8 C.F.R. § 1003.1(b). We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252.  When the BIA issues its own opinion on the merits, we review its decision, not that of the IJ.  Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014).  However, where, as here, the BIA expressly adopts portions of the IJ's opinion, we review both the IJ and BIA decisions. See S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543-44 (3d Cir. 2018).

[5] "We review de novo whether [a petitioner's] due process rights were violated." Abdulrahman v. Ashcroft, 330 F.3d 587, 595 (3d Cir. 2003).

5

allowed to make arguments on his . . . own behalf; and (3) has the right to an individualized determination of his . . . interests." Id. (citations and internal quotation marks omitted). Where a petitioner claims he was deprived of his due process right to make "his case to the BIA or the IJ," id., "he must show (1) that he was 'prevented from reasonably presenting his case' and (2) that 'substantial prejudice' resulted," Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) (quoting Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006)).

Here, Peraza stresses the number of questions the IJ asked and argues, based on cases like Abulashvili v. Attorney General, 663 F.3d 197 (3d Cir. 2011), and Serrano-Alberto v. Attorney General, 859 F.3d 208 (3d Cir. 2017), that this reflects bias and prevented him from fairly presenting his case. However, our analyses in Abulashvili and Serrano-Alberto were not based on the number of questions alone; rather, we considered, e.g., the IJ's "demeaning tone, . . . focus on issues irrelevant to the merits, [and] brow beating." Serrano-Alberto, 859 F.3d at 223. While the IJ here frequently interjected and posed a number of leading questions, a close examination of the record reveals that throughout the proceedings, the IJ was courteous and professional toward Peraza and his counsel.[6] Contra Serrano-Alberto, 859 F.3d at 216-18 (emphasizing the IJ's lack of preparation, "argumentative[,] tone and express[ions] [of] exasperation").

_____

[6] Peraza asserts that, because of his age, the IJ should have treated him with the special care set forth in immigration hearing guidelines. However, Peraza was not entitled to the special care described in these guidelines. First, as Peraza acknowledges, these guidelines were written for hearings involving children who arrived in the United States unaccompanied, and Peraza arrived with his mother. Pet'r Br. at 20 n.2. Second, Peraza was seventeen years old when he testified before the IJ, and hence was older than

6

The IJ's interjections during Peraza's testimony, though numerous, were within his discretion, see 8 U.S.C. § 1229a(b)(1) ("The immigration judge shall . . . interrogate, examine, and cross-examine the alien and any witnesses."); see also Abulashvili, 663 F.3d at 207 (acknowledging IJ's discretion to question applicants), and "allow[ed] [Peraza] to clarify inconsistent responses [and gave] him the opportunity to respond in further detail," Abdulrahman v. Ashcroft, 330 F.3d 587, 596-97 (3d Cir. 2003). For example, when Peraza first mentioned a gang member by name, the IJ asked Peraza for more details about the gang member and how Peraza came to know him. When Peraza's counsel first asked him about the soccer incident, he provided a brief response and then his counsel asked about other attacks, but the IJ interjected to allow Peraza to provide additional detail about the soccer incident. The IJ also interjected in response to objections by the Government. Far from interfering with his ability to present evidence, the IJ's questions enabled Peraza to provide more complete testimony. Contra Serrano-Alberto, 859 F.3d at 217-18 (stating that the IJ "curtailed" petitioner's "ability to explain himself or finish his answers," including by limiting his answers to "yes or no" answers to her questions); Podio v. INS, 153 F.3d 506, 510 (7th Cir. 1998) ("The frequency of the immigration judge's interruptions, and the impatience evident in many of his comments, leave us unconvinced that the immigration judge was merely trying to point [the applicant] in what he thought was the right direction and that [the applicant] could have testified further if he had so desired." (internal quotation marks omitted)).

---

the type of child to which the unaccompanied minor guidance was intended to apply. In any event, the IJ was attentive to Peraza throughout the proceedings.

Finally, to the extent that the IJ imposed restrictions on the presentation of corroborating testimony, such restrictions were not unreasonable.  For example, the IJ's request for brief testimony by Peraza's expert was reasonable in light of her detailed declaration, which the IJ considered.  Moreover, although the IJ initially requested that this testimony be brief, the IJ allowed Peraza's counsel to ask additional questions and extended the hearing into the afternoon.  Contra Oshodi v. Holder, 729 F.3d 883, 897 (9th Cir. 2013) (holding that IJ violated due process by preventing applicant from testifying about "the persecution he described in his application" and overlooking the contents of the affidavit the applicant submitted on the same critical topic); Rodriguez Galicia v. Gonzales, 422 F.3d 529, 540 (7th Cir. 2005) (holding due process violation where IJ's only justification for not hearing one witness was the IJ's "self-imposed time constraint" and the IJ "offered no explanation" for excluding the testimony of a second witness, despite the potential value of both witnesses' testimony to adjudicating the application).

In sum, the IJ fulfilled his responsibility to "function as a neutral, impartial arbiter."  Abulashvili, 663 F.3d at 207.  Contra id. at 207-08 (holding that IJ violated applicant's due process where IJ "supplant[ed] the role of the government's" attorney by conducting nearly all of the cross-examination).  The IJ did not err in its management of the proceedings, and he did not deny Peraza a fair hearing.[7]

---

[7] Peraza also argues that the BIA failed to consider record evidence, but he does not identify specific evidence that the BIA overlooked.  A close review of his argument, however, reveals that he actually challenges the weight the BIA gave to the evidence.  Under the substantial evidence standard, we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result."  Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted).  Even if we had

8

III

Peraza also claims that remand is warranted because the BIA erred by affirming the IJ's adverse credibility determination. While this was one ground for its ruling, the BIA also affirmed on grounds separate from the credibility finding, and we may affirm the BIA's order on any ground upon which the agency relied. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). Accordingly, we will assume that Peraza's testimony was credible and scrutinize whether the BIA's alternative holding was potentially influenced by the adverse credibility determination. See, e.g., Bandari v. INS, 227 F.3d 1160, 1168 (9th Cir. 2000).[8]

To be eligible for asylum, an alien must demonstrate "[past] persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Persecution" encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). "Abusive treatment

_____

the authority to weigh the evidence differently, this does not compel a different result. See Siewe v. Gonzales, 480 F.3d 160, 167-68 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous . . . . [R]ecord support for a contrary inference—even one more plausible or more natural—does not suggest error." (internal quotation marks omitted)).

[8] The Government contends that Peraza waived any challenge to the BIA's denial of his asylum claim. However, Peraza argued in his opening brief that the IJ's alleged errors "cannot easily be disaggregated" from the alternate grounds the BIA and IJ invoked for denying his asylum application, and he has thus preserved a substantive challenge to the BIA's denial of his asylum application.

9

and harassment, while always deplorable," do not necessarily amount to persecution. Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007).[9]

The BIA correctly determined that Peraza failed to demonstrate a "reasonable possibility" of future persecution based on a protected trait. Peraza believes that he will be persecuted upon return to El Salvador on four protected grounds. Peraza's first three bases for asylum are his membership in proposed particular social groups. A particular social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (quoting In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)). Peraza's proposed groups are (1) young Salvadoran men who have resisted gang membership and lack familial protection, (2) sons of cooperating witnesses, and (3) young men with tattoos from which gang membership is imputed. The BIA did not err in its determination that Peraza did not demonstrate these groups qualify as a "particular social group" under § 1101(a)(42)(A) and nothing in the BIA's decision suggests that the adverse credibility determination colored its analysis.

---

[9] We review the BIA's legal determinations de novo, and "accept factual findings if supported by substantial evidence." Sesay, 787 F.3d at 220 (citation omitted). Whether a petitioner has demonstrated a nexus between the alleged or anticipated persecution and a protected ground is a factual question concerning whether the persecutor would harm the applicant but for the protected trait. See I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483 (1992); Matter of N-M-, 25 I. & N. Dec. 526, 531 (BIA 2011). "[T]he existence of a cognizable particular social group presents a mixed question of law and fact, since the ultimate legal question of cognizability depends on underlying factual questions concerning the group and the society of which it is a part." S.E.R.L, 894 F.3d at 543.

First, those targeted for resisting gang recruitment are not generally recognized as members of a cognizable particular social group. See, e.g., Rodas-Orellana v. Holder, 780 F.3d 982, 991 (10th Cir. 2015) (holding that proposed group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs," lacked social distinction). Despite Peraza's qualifiers of "youth" and "lacking familial protection," his proposed group still lacks particularity and social distinction. See, e.g., Mayorga-Vidal v. Holder, 675 F.3d 9, 15 (1st Cir. 2012) (holding that the proposed group "young Salvadoran men who have already resisted gang recruitment and whose parents are unavailable to protect them" was not cognizable); Mendez-Barrera v. Holder, 602 F.3d 21, 25, 27 (1st Cir. 2010) (determining that the group "young [El Salvadoran] women recruited by gang members who resist such recruitment" lacked particularity because "[t]here are, for example, questions about who may be considered 'young,' the type of conduct that may be considered 'recruit[ment],' and the degree to which a person must display 'resist[ance]'").

Second, while "cooperating witnesses" may be a cognizable particular social group, see, e.g., Morales-Gamez v. Whitaker, 744 F. App'x 520, 521 (9th Cir. 2018) (Mem.); Gashi v. Holder, 702 F.3d 130, 132 (2d Cir. 2012), substantial evidence supports the BIA's determination that Peraza failed to demonstrate that his purported group of sons of cooperating witnesses is not applicable here because Peraza's mother played only a limited role in helping search for his cousin and identifying the body.

Third, the BIA did not err in its determination that Peraza's proposed group of young men with tattoos from which gang membership is imputed lacks particularity and

11

social distinction. See Sanchez v. Holder, 464 F. App'x 624, 626 (9th Cir. 2011) (rejecting proposed group of "young men who are deported to El Salvador [and] may be perceived as . . . gang member[s] because of their tattoos"); Castellano-Chacon v. INS, 341 F.3d 533, 549 (6th Cir. 2003) ("[T]attooed youth do not share an innate characteristic, nor a past experience, other than having received a tattoo."), modified on other grounds by Almuhtaseb v. Gonzales, 453 F.3d 743 (6th Cir. 2006). Additionally, Peraza's claim that he will likely be persecuted because rival gang membership would be imputed to him based on his tattoos is undermined by: (1) his testimony that police investigated his father during a visit to El Salvador because he has non-gang tattoos, but was released without incident, and (2) his expert's testimony that people in El Salvador are generally suspicious of non-gang tattoos because they do not understand them.

Finally, the BIA correctly determined that Peraza failed to demonstrate a reasonable fear of future persecution based on an allegedly held anti-gang political opinion. "[E]ven if we assume that refusal to join a gang is an expression of political opinion," Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 609 (3d Cir. 2011), Peraza has not demonstrated that he ever expressed to the gang, or anyone else, that he refused to join because of his claimed political opinion. Accordingly, "to the extent that his refusal to join the gang was based on his political opinion, his refusal was based on an internally held political opinion which cannot support a claim that he was persecuted on account of that political opinion. Holding a political opinion, without more, is not sufficient to show persecution on account of that political opinion." Id.

## IV

For the foregoing reasons, we will deny Peraza's petition.