*Titichamale v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of January, two thousand twenty-four.**

**PRESENT:**

> **MICHAEL H. PARK,**
> **EUNICE C. LEE,**
> **SARAH A. L. MERRIAM,**
> > *Circuit Judges.*

---

**Rene Titichamale, AKA Jose Rene Chamale,**

> *Petitioner*,

> v.                                                                     20-3236

**Merrick B. Garland,**
**United States Attorney General,**

> *Respondent*.

---

**FOR PETITIONER:**                    PAUL O'DWYER, Law Office of Paul
                                       O'Dwyer, P.C., New York, N.Y.

**FOR RESPONDENT:** JONATHAN S. NEEDLE, Trial Attorney, (Brian M. Boynton, Principal Deputy Assistant Attorney General; Stephen J. Flynn, Assistant Director, *on the brief*) Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("Board") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED IN PART** and **DENIED IN PART**, and the case is **REMANDED** to the Board for further proceedings consistent with this order.

Petitioner Rene Titichamale, a native and citizen of Guatemala, seeks review of a decision of the Board of Immigration Appeals affirming the denial of his applications for cancellation of removal, withholding of removal, and relief under the Convention Against Torture. *In re Rene Titichamale,* No. A 216 557 693 (B.I.A. Sept. 14, 2020), *aff'g* No. A 216 557 693 (Immigr. Ct. N.Y.C. Aug. 16, 2019). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues presented.

We have reviewed the Immigration Judge's decision as modified and supplemented by the Board. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law de novo. *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014). The agency's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

2

**I.  Cancellation of Removal**

We have jurisdiction to review questions of law, including whether a conviction is a controlled-substance offense that bars cancellation of removal. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1252(a)(2)(B)(i), (D); *Doe v. Sessions*, 886 F.3d 203, 207 (2d Cir. 2018) (explaining that where a petitioner "disputes that his crime was a removable offense under the 'categorical approach' . . . [t]his is a question of law, which the Court reviews *de novo*"). For immigration purposes, a controlled-substance offense is limited to drugs covered by the federal drug schedules. *See Doe*, 886 F.3d at 208. Courts "generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). This approach looks "not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding" crime. *Id*. (quotation marks omitted). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Id*. (quotation marks omitted).

California Health and Safety Code section 11377(a) criminalizes the possession of:

> any controlled substance which is (1) classified in Schedule III, IV, or V, [of California's drug schedules] and which is not a narcotic drug, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), and (20) of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, (4) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (5) specified in subdivision (d), (e), or (f) of Section 11055, unless upon the prescription of a physician, dentist, podiatrist, or veterinarian, licensed to practice in this state.

Cal. Health & Safety Code § 11377(a). At the time of Titichamale's misdemeanor conviction in California in 2014 for possession of a controlled substance (methamphetamine), chorionic gonadotropin was a controlled substance under California law, *see* Cal. Health & Safety Code § 11056(f) (eff. until Dec. 31, 2018), but not federal law, *see* 21 C.F.R. §§ 1308.11–1308.15.

3

Section § 11377(a) is thus not a categorical match for the federal definition of a controlled-substance offense.[1]

When, as here, the offense under state law is not a categorical match with federal law, the agency must next determine whether the statute is divisible. *See Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017). A divisible statute is "one that lists elements in the alternative, and, in doing so, creates a separate crime associated with each alternative element," whereas "an indivisible statute creates only a single crime, but it may spell out various factual ways, or means, of committing some component of the offense." *Id.* (cleaned up). If the statute is indivisible, the agency is limited to the initial determination that there is no categorical match; if it is divisible, then the agency can use a "modified categorical approach [that] permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction." *Id*.

Here, the Board erred by concluding that the categorical approach did not apply to a determination of whether a conviction is a bar to relief from removal. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021) (requiring application of the categorical approach even where the petitioner has the burden to prove eligibility for relief from removal). Relying on that misunderstanding, the Board failed to consider whether California Health and Safety Code § 11377(a) is divisible. Divisibility requires an inquiry into state law, specifically, here, whether California Health and Safety Code § 11377(a) "creates only a single crime" but provides various *means* of committing that offense, or whether the individual drugs are elements of the offense, such that a modified categorical approach can be applied that would allow the agency to consult

[1] *But see United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020) (holding that, because they are physically impossible to create, California's inclusion of geometric isomers within its definition of methamphetamine has no effect on the categorical analysis).

4

the record of conviction. *Harbin*, 860 F.3d at 64; *see also Coronado v. Holder*, 759 F.3d 977, 981 (9th Cir. 2014) (holding that § 11377(a) is divisible). We remand for the Board to conduct this analysis in the first instance, and if appropriate, to consider the merits of Titichamale's application for cancellation of removal.

**II.    Withholding of Removal[2]**

An applicant for withholding of removal bears the burden to show that he will more likely than not be persecuted because of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b)(1); *Wei Sun v. Sessions*, 883 F.3d 23, 27–28 (2d Cir. 2018) ("Eligibility for withholding of removal requires a clear probability of persecution, *i.e.*, it is more likely than not that the alien would be subject to persecution." (cleaned up)). The applicant must show that one of these grounds was at least "one central reason" for the claimed persecution. *Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (holding that the "one central reason" standard of 8 U.S.C. § 1158(b)(1)(B)(i) applies to both asylum and withholding of removal).

The Board determined that Titichamale failed to establish a nexus to a protected ground. Titichamale argues that he established a nexus on two grounds: (1) the MS-13 gang will retaliate because he identified its members to authorities, and (2) the Barrio 18 gang and his indigenous community attacked or threatened him because they perceived him to be a member of MS-13.

A.    Cooperation Against MS-13

Titichamale asserted that he was persecuted on account of his membership in the particular social group of individuals "who have cooperated with authorities against MS-13 gang members."

---

[2] Titichamale does not challenge the agency's determination that he was ineligible for asylum because his application was not timely filed within one year of his entry to the United States. 8 U.S.C. § 1158(a)(2)(B).

5

Certified Admin. Record at 89. We deny the petition as to this claim. First, the Board found no nexus between the feared harm and this proposed ground because MS-13 members were motivated by recruitment and retaliation. *See Melgar de Torres v. Reno*, 191 F.3d 307, 314 (2d Cir. 1999) (harm stemming from "general crime conditions" is not persecution on account of a protected ground). Titichamale does not challenge this determination, which is dispositive. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming issue abandoned when not meaningfully challenged on appeal). Moreover, even if he had not abandoned this claim, the record supports the agency's alternative determination that this group was not cognizable because it lacked either particularity or social distinction.

Contrary to Titichamale's argument, the public nature of cooperating with authorities does not necessarily make this a socially distinct group. While a group does not have to be homogenous, determining whether a proposed group is cognizable involves an "inquiry into whether the group can be described in sufficiently distinct terms that it would be recognized, in the society in question, as a discrete class of persons." *Ordonez Azmen v. Barr*, 965 F.3d 128, 135 (2d Cir. 2020) (quotation marks omitted). Although under some circumstances informants or witnesses may constitute a cognizable group, this case is distinguishable from *Gashi v. Holder*, 702 F.3d 130 (2d Cir. 2012). There, we found a cognizable social group where the group consisted of individuals who had witnessed war crimes in Serbia, cooperated with international investigators, and had their names published on a list of potential witnesses. *Id*. at 137. That group of potential witnesses was limited by both a specific set of crimes and the publication of the witnesses' names. In contrast, Titichamale's proposed group of "people who have cooperated with the authorities against MS-13" is not limited because it could include any individual who has ever reported any gang activity or identified gang members to the police or to other authorities,

6

which in this case were the leaders of Titichamale's indigenous community. Given the broad swath of activity that could implicate group membership, the Board did not err in finding that this proposed social group was not cognizable. *See Paloka*, 762 F.3d at 196.

### B. Perceived Membership in MS-13

Titichamale asserts that Barrio 18 and the vigilante group in his indigenous community targeted him because they perceived him to be a member of MS-13. Contrary to the Government's assertion, this issue is exhausted because the Board acknowledged the factual basis for the claim based on imputed gang membership. *Cf. Waldron v. INS*, 17 F.3d 511, 515 n.7 (2d Cir. 1993) (noting that "we . . . may consider the issue" where "the BIA addressed the issue . . . excusing [the petitioner's] failure to raise the issue previously"); *see also Gill v. INS*, 420 F.3d 82, 86 (2d Cir. 2005) (holding that the "we enjoy broad discretion to consider subsidiary legal arguments that were not specifically raised below" (quotation marks omitted)).

The Board has held that gang membership and imputed gang membership generally are not proper grounds for a particular social group. *See Matter of E–A–G–*, 24 I. & N. Dec. 591, 595–96 (B.I.A. 2008). But the Board must consider whether a proposed group is cognizable as a particular social group under the particular circumstances of each case. *See, e.g.*, *Chavez v. Garland*, 51 F.4th 424, 434 (1st Cir. 2022) (rejecting *Matter of E–A–G–* because "[s]ocial group determinations are made on a case-by-case basis . . . [and] [n]one of the reasons that *Matter of E–A–G–* provided for determining that actual gang membership cannot constitute a 'particular social group' apply to those who are incorrectly perceived to be gang members, who do not necessarily have a criminal past" (quotation marks omitted)); *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 897–98 (9th Cir. 2021) ("We conclude that the approach set forth in *Matter of E–A–G–* is inconsistent with the requisite fact-based analysis of proposed particular social groups.").

7

In this case, the Board did not consider how *actual* gang membership might differ from *perceived* gang membership—the former is a choice, the latter could be out of the individual's control. *Cf. Benitez Ramos v. Holder*, 589 F.3d 426, 429 (7th Cir. 2009). Titichamale asserts that his perceived gang membership was immutable because he repeatedly denied belonging to MS-13, but Barrio 18 and his indigenous community did not believe him. Titichamale also argues that this group is socially distinct because he was perceived as a member of MS-13 by his general community and because "common sense dictates that if MS-13 are viewed as socially distinct in Guatemala . . . then people who are suspected or perceived as belonging to MS-13 are also socially distinct." Pet. Br. at 24. Neither the Immigration Judge nor the Board expressly addressed this proposed social group. We thus remand as to this portion of Titichamale's withholding claim so that the agency can address in the first instance whether perceived gang membership in this context can constitute a particular social group.

C.    Unwilling or Unable to Protect

Additionally, the BIA erred in its consideration of whether Titichamale demonstrated that the Guatemalan government would be unwilling or unable to protect him. "To qualify as persecution the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (quotation marks omitted). The BIA concluded that Titichamale failed to satisfy this requirement because he never complained to the police or sought help from any government official. But "a failure to ask for police help is not enough, by itself, to preclude" a finding that the government would be unwilling to help. *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593 (2d Cir. 2021). This is particularly true where, as here, an applicant "reinforce[s]" his claim with objective

8

evidence such as "articles from newspapers and other sources that report" that the Guatemalan authorities are unwilling or unable to prevent certain crimes. *Pavlova v. INS*, 441 F.3d 82, 92 (2d Cir. 2006). If the agency reaches this issue on remand, it should address whether the country conditions evidence establishes that requesting assistance would have been futile.

### III. CAT Protection

We deny the petition as to the CAT claim. The Board concluded that Titichamale failed to establish that he would more likely than not be tortured in Guatemala, given the 12 years that had passed since he came to the United States, and that he did not demonstrate that the Guatemalan government would acquiesce to his torture. Titichamale argues only that he established that the Guatemalan government was willfully blind to the threats of torture from both the gangs and vigilantes from his indigenous community and failed to protect him, and that the Board erred by failing to consider his country conditions evidence. He does not address the Board's conclusion that he failed to establish a likelihood of torture. We deny the petition as to the CAT claim because he has failed to challenge a dispositive basis for the Board's decision. *See Yueqing Zhang*, 426 F.3d at 545 n.7.

\* \* \*

We have considered all of Titichamale's remaining arguments and find them to be without merit. For these reasons, the petition is **GRANTED IN PART** and **DENIED IN PART**, and the case is **REMANDED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9